UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN B. FITZGERALD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 04-2200 (GK) |
| ) | |
| DISTRICT OF COLUMBIA HOUSING ) | |
| FINANCE AGENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION

Plaintiffs are tenants and a tenant association in a housing project financed by the District of Columbia Housing Finance Agency ("HFA").[1]  Defendant is HFA.[2]  Plaintiffs bring suit challenging HFA's creation of HFA-financed housing projects "in the absence of regulations required under [District of Columbia] law to establish procedures for evictions and protections from retaliatory action," claiming that these actions violate their Fifth Amendment procedural due process rights and District of Columbia law under 42 U.S.C. § 1983.  Am. Compl. ¶ 71.

This matter is before the Court on HFA's Motion to Dismiss. Upon consideration of the Motion, Opposition, Reply, oral argument

---

[1] Plaintiffs are Kevin B. Fitzgerald; Brandy Anderson; Andrew J. Critchfield; Richard A. Coward; Antonio J. Gonzalez; Donald Kasper; Rhoda Lerner; Fatima H. Pashaei; Junienne B. Reed; Thomas L. Seidman; Dwayne Smith; Reginald A. Watson, and the New Capitol Park Plaza Tenants Association, Inc. ("NCPPTA").

[2] On February 7, 2005, Plaintiffs voluntarily dismissed Milton Bailey, Director of HFA, and the District of Columbia as Defendants.  See Docket No. 12.

on August 15, 2005, and the entire record herein, and for the reasons stated below, HFA's Motion to Dismiss is **granted.**

I.   **BACKGROUND**[3]

In 1979, HFA was established as "a corporate instrumentality of the District [of Columbia] ... to generate funds from private and public sources to increase the supply and lower the cost of funds available for residential mortgages and construction loans and thereby help alleviate the shortage of adequate housing."  D.C. Code § 42.2701.01(b).   HFA "does not currently own any of the projects, but merely issues municipal bonds to enable the low-interest rate financing of multi-family rental housing."  Def.'s Mot. at 1-2.

Plaintiffs claim that "[w]hen they began their residencies in two buildings in Southwest Washington, D.C., the buildings were not HFA-assisted, and they enjoyed the benefits of D.C.'s extensive rental housing laws.   When their homes became an HFA-assisted housing project, however, they lost the protection of those laws."[4]

_____

[3] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.   See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Andrx Pharm. v. Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001).   Accordingly, the facts set forth herein are taken from Plaintiffs' Amended Complaint or from the undisputed facts presented in the parties' briefs.

[4] HFA argues that the Court should disregard this factual allegation "because Plaintiffs are relying on assertions that are not contained in their Amended Complaint."   Def.'s Reply at 6.
(continued...)

Pl.s' Opp'n at 1 (citing D.C. Code § 42-2703.08(a)[5]).  According to Plaintiffs, "[b]y law, they remained entitled to 'procedures for eviction and protection from retaliatory action,' D.C. Code § 42-2703.08(b)[6]; but in reality, they were deprived of those procedures because HFA had failed to engage in mandatory rulemaking."  Pl.s' Opp'n at 1.  Plaintiffs maintain that "because of HFA's misconduct, tenants in HFA-funded housing do not benefit from established procedures for eviction and protections from retaliatory actions in the way that all other DC tenants do, to which they are lawfully entitled."[7]  Am. Compl. ¶ 27.

_____

[4](...continued)
While this factual allegation is not contained in Plaintiffs' Amended Complaint in so many words, it can be inferred from the facts alleged therein.  See Kowal, 16 F.3d at 1276.

[5] D.C. Code § 42-2703.08(a) states, "Housing projects assisted by the [Housing Finance] Agency or through the auspices of the [Housing Finance] Agency under the provisions of this chapter shall be exempt from the provisions of Chapter 35 of this title."

[6] D.C. Code § 42-2703.08(b) states,

The [Housing Finance] Agency shall establish, by rulemaking, procedures for evictions and protections from retaliatory action for tenants of housing projects exempted from Chapter 35 of this title under subsection (a) of this section.  Such procedures and protections shall be in accordance with subchapter V of Chapter 35 of this title.

Id.

[7] At oral argument on August 15, 2005, Plaintiffs' counsel represented that HFA tenants are protected by all of the same Landlord/Tenant laws that protect other District of Columbia tenants, with two exceptions.  First, because HFA tenants are
(continued...)

Plaintiffs also allege that they "have complained to HFA that they are suffering from unlawful retaliatory action, but [HFA] has taken no action to adjudicate these complaints or enforce [their] rights." Id. ¶ 30.  According to Plaintiffs, "[t]he conditions [they] were facing and describing to HFA were quite severe.  They complained of lack of heating facilities during the winter, boarded up windows and deactivated ventilation and air conditioning systems during the summer, vermin infestations, mold, demolition activities causing severe dust and noise, and doors that could not be locked." Id. ¶ 31.  Plaintiffs maintain that "Defendant HFA, by letter dated July 3, 2003, and signed by Executive Director Milton Bailey, confirmed that it 'has received numerous calls and correspondence' complaining of 'management activities, rent increases, and the renovation.'"  Id. ¶ 46.  Plaintiffs claim that "[t]he July 3 letter from HFA confirmed that HFA had no procedure in place for dealing with tenant complaints.  The July 3 letter from HFA directs

_____

[7](...continued)
exempted from the Residential Housing Commission administrative process, they are not afforded the benefits of the so-called "Drayton stay," whereby eviction proceedings in the District of Columbia Superior Court are halted pending the outcome of the administrative process. See Drayton v. Poretsky Mgmt., Inc., 462 A.2d 1115 (D.C. 1983). The Drayton stay, however, has no effect on a litigant's substantive rights. Rather, it allows a litigant first to use the administrative process in the hope that she will resolve her dispute without going to full litigation in the District of Columbia Superior Court. Second, Plaintiffs' counsel maintained that the retaliatory eviction defense is not available to HFA tenants in Landlord/Tenant Court. Defense counsel vigorously denied this claim. Neither counsel advanced any dispositive caselaw on this point.

tenants to filter their complaints through their tenant associations. It suggests that such a process is necessary because HFA does not even have procedures in place sufficient to track tenant complaints as they come in to the Agency." <u>Id.</u> ¶¶ 47, 48.

Plaintiffs allege that on July 22, 2003, HFA issued a report entitled "Capital Park Plaza and Twin Towers Resident Tour." <u>Id.</u> ¶ 52. According to Plaintiffs, "[t]his July 22 report includes hundreds of pages of correspondence from tenants complaining of conditions that appear to violate the housing code, as well as what appear to be dozens of formal complaints using the [Department of Consumer and Regulatory Affairs] Tenant Petition/Complaint form." <u>Id.</u> ¶ 53. Based on the findings of this report, HFA asked the landlords to develop a "plan" to remedy the problems it identified. <u>See</u> <u>id.</u> ¶¶ 54, 55. Plaintiffs allege that when HFA found the landlords' plan inadequate, it "merely demanded another 'plan.'" <u>Id.</u> ¶ 56.

By letter dated September 30, 2003, HFA acknowledged that there were serious issues concerning "health, safety, security, and maintenance issues," but stated that it would accept the landlords' plan to resolve these issues. <u>Id.</u> ¶ 58. Plaintiffs contend that "HFA offered no redress or further process relating to past violations of tenant rights." <u>Id.</u> ¶ 59.

Plaintiffs maintain that they have complained to HFA that (1) "their landlord is failing to conduct maintenance and correct

dangerous conditions that are in violation of the housing code," id. ¶ 63; and (2) "despite their written pleas to the landlord to bring their housing into compliance with the housing code," the landlord continues to increase rents, to reduce services to tenants, and to seek to evict tenants. Id. ¶¶ 64, 65, 66. According to Plaintiffs, "[a]t no point did HFA determine that the tenant's complaints were unfounded; yet it never awarded them any relief." Id. ¶ 67.

Plaintiffs allege that "[b]eyond its consistent non-responsiveness, it appears that HFA now fails even to read complaints from tenants." Id. ¶ 62.

On December 20, 2004, Plaintiffs filed the instant action alleging a violation of their Fifth Amendment procedural due process rights and District of Columbia law under 42 U.S.C. § 1983. On February 7, 2005, they filed an Amended Complaint which included the same allegations as their Original Complaint. In Count I, Plaintiffs claim that "[a] legal cause of action constitutes a species of property protected by the Due Process Clause[.]" Id. ¶ 70. According to Plaintiffs, "[b]y creating assisted housing projects in the absence of regulations required under DC law to establish procedures for evictions and protections from retaliatory action, HFA, under color of law, deprived Plaintiffs, and members of the associational Plaintiff, of their property rights." Id. ¶ 71. Plaintiffs claim that "[s]uch deprivation of [their]

property by Defendant HFA was unlawful and in violation of [their] Constitutional rights."  Id. ¶ 72.

In Count II, Plaintiffs contend that "DC law requires HFA to oversee procedures for eviction and protections from retaliatory actions for tenants in HFA-assisted housing, including Plaintiffs and members of Plaintiff NCPPTA."  Id. ¶ 74.  Plaintiffs claim that they "complained to HFA of violations of their rights in HFA-assisted housing."  Id. ¶ 75.  According to Plaintiffs, "[u]nder color of law, HFA asserted control over [their] housing, but denied [them], and members of Plaintiff NCPPTA, any adjudicatory procedure or meaningful opportunity to be heard upon their claimed rights."  Id. ¶ 76.  Plaintiffs claim that "[s]uch deprivation of any meaningful opportunity to be heard upon their claimed rights was unlawful and in violation of [their] Constitutional rights."  Id. ¶ 77.

In Count III, Plaintiffs allege that "DC law entitles tenants in HFA-assisted housing, including Plaintiffs and members of Plaintiff NCPPTA, to a set of regulations establishing procedures for eviction and protections from retaliatory actions."  Id. ¶ 79. According to Plaintiffs, "[u]nder color of law, HFA deprived [them] of their statutory rights by failing to undertake the action required by law."  Id. ¶ 80.  Plaintiffs claim that "[s]uch total denial of any legally established procedures was unlawful and in violation of [their] Constitutional rights."  Id. ¶ 81.

Plaintiffs seek: (1) compensatory damages; (2) the entry of a declaratory order that HFA has violated their constitutional rights; (3) the entry of a permanent injunction requiring HFA "to adopt and follow rules that are approved by this Court that adequately establish procedures for eviction and protections for retaliatory actions for tenants in HFA-assisted housing" and prohibiting HFA from "converting any housing into assisted housing until HFA establishes [such] rules," id. ¶¶ 83(b), (c); and (4) reasonable attorney's fees and costs.

On February 28, 2005, HFA filed the instant Motion to Dismiss.

## II.  STANDARD OF REVIEW

A motion to dismiss should only be granted "when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Accordingly, "[t]he [Amended] complaint is construed liberally in [Plaintiffs'] favor, and the Court should grant [Plaintiffs] the benefit of all inferences that can be derived from the facts alleged." New v. Rumsfeld, 350 F.Supp.2d 80, 88 (D.D.C. 2004)

(citing Kowal, 16 F.3d at 1276; accord Andrx Pharmaceuticals, 256 F.3d at 805).

## III. ANALYSIS

HFA seeks dismissal of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs lack standing.[8]  Specifically, it claims that Plaintiffs "have no cognizable injury, they have failed to show how the Court may reasonably redress their alleged injury.  Furthermore, they cannot demonstrate that the HFA's inaction singled out these plaintiffs, caused them injury or precluded their right to redress."  Def.'s Mot. at 12.

"Article III standing requires [P]laintiffs to establish, as an 'irreducible constitutional minimum,' that they face 'injury in fact' caused by the challenged conduct and redressable through relief sought from the court."  Shays v. Fed. Election Comm'n, 04cv5352 (D.C. Cir.), July 15, 2005, Mem. Op. at 8 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).[9]  See

---

[8] HFA also seeks to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) on the grounds that Plaintiffs "fail[] to state a justiciable claim under both the Due Process Clause of the U.S. Constitution and under 42 U.S.C. § 1983."  Def.'s Mot. at 2.  The Court will not address these arguments in light of its holding infra that Plaintiffs lack standing.  See Nat'l Ass'n of Home Builders v. United States Army Corps of Engineers, -- F.3d --, 2005 WL 1789740 at *12 (D.C. Cir. 2005) ("[w]ant of jurisdiction robs a federal court of the power to act [and] standing is a prerequisite to jurisdiction") (internal citations omitted).

[9] Shays v. Fed. Election Comm'n has been published at 414 F.3d (continued...)

Rainbow/PUSH Coalition, 396 F.3d 1235, 1240 (D.C. Cir. 2005) (same).

The first element, "injury in fact," requires "an invasion of a concrete and particularized legally protected interest." Shays, Mem. Op. at 9 (internal quotation omitted). The second element, "causation," demands "a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. at 9 (internal quotation omitted). The third element, "redressability," requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 9 (internal quotation omitted). See Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663-64 (D.C. Cir. 1996) ("Redressability examines whether the relief sought ... will likely alleviate the particularized injury alleged by the plaintiff."); Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000) (requiring a "substantial likelihood" that the relief will remedy the injury).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing court must accept as true

---

[9](...continued)
76 (D.C. Cir. 2005).  To date, however, page citations for this publication are not available.  Therefore, the Memorandum Opinion citation has been used.

all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).  See Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987), Alliance For Democracy v. Fed. Election Comm'n, 362 F.Supp.2d 138, 142 (D.D.C. 2005).

In the instant case, Plaintiffs' alleged injury results from the severe conditions in which they live.  See Am. Compl. ¶ 31. Accepting as true Plaintiffs' allegations, as the Court must, Plaintiffs have clearly sustained an "injury-in-fact," i.e., one that is "both 'concrete and particularized' and 'actual or imminent.'"  Rainbow/PUSH Coalition, 396 F.3d at 1240 (quoting Microwave Acquisition Corp. v. FCC, 145 F.3d 1410, 1412 (D.C. Cir. 1998) (citing Lujan, 504 U.S. at 560)).  Plaintiffs lack standing, however, because they have failed to demonstrate either how this injury is "fairly traceable" to HFA's challenged action or how a favorable judicial decision on the merits of their claim will redress this injury.

Plaintiffs in this case challenge HFA's alleged failure to "establish, by rulemaking, procedures for evictions and protections from retaliatory action for tenants...."  D.C. Code § 42-2703.08(b).  See Pl.s' Opp'n at 3.  Plaintiffs, however, have not demonstrated that their injury -- uninhabitable premises with House Code violations -- was caused by HFA's alleged failure or can be redressed by the relief they request.  To put it another way, even

if the Court was to grant Plaintiffs' request and order HFA to adopt and follow adequate procedures, there is no guarantee that they would achieve their goal, namely living conditions that are habitable and in compliance with the D.C. Housing Code.  The most that Plaintiffs can achieve in this lawsuit is the creation of administrative procedures, rather than the substantive outcome they desire.  Absent such a showing, Plaintiffs lack standing to challenge HFA's alleged failure to adopt and follow such rules, and the Court has no jurisdiction to consider their claims.

## IV.  CONCLUSION

For the foregoing reasons, HFA's Motion to Dismiss is **granted**.

An Order will issue with this Memorandum Opinion.

August 17, 2005

                                   /s/_____
                                   GLADYS KESSLER
                                   United States District Judge